IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TREVOR SEARLES,

                Plaintiff,                OPINION AND ORDER

v.

                                                19-cv-028-wmc

BRYDEN MOTORS, INC.,

                Defendant.

---

Plaintiff Trevor Searles alleges that defendant Bryden Motors, Inc., retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), by terminating his employment after complaining that another employee was being sexually harassed. Before the court is defendant's motion for summary judgment. (Dkt. #15.) For the reasons that follow, the court will deny that motion, finding plaintiff has: (1) raised material issues of genuine fact about whether Bryden Motors, Inc., was his employer; and (2) submitted sufficient evidence for a reasonable jury to find that he was terminated because of his protected activity.

UNDISPUTED FACTS

As an initial matter, plaintiff failed to follow this court's summary judgment procedures, which are set forth in the preliminary pretrial packet that was distributed at the same time as the court's preliminary pretrial conference order. (Dkt. #9.) Moreover, plaintiff's counsel has practiced fairly extensively in this court, meaning there is *no* viable excuse for his failure to follow these procedures from the outset, much less fail to address this failure when brought to his attention in defendant's reply. That said, the court is

disinclined to ignore plaintiff's evidence because of this failure by his counsel. As such, the court will consider plaintiff's declaration and materials attached to that declaration in setting forth the following undisputed facts. However, plaintiff's counsel *must* do better going forward. As such, he will be required to review the preliminary pretrial packet, in particular the summary judgment procedures and the jury trial procedures for pretrial submissions, and submit a letter to the court verifying he has done so as set forth in the order below. With that said, unless otherwise noted, the court finds that the following facts are undisputed and material when construed in favor of plaintiff as the nonmoving party.

### A. Relationship between Bryden Motors and Oops, LLC

Defendant Bryden Motors, Inc., is a C corporation owned by Vicki Bryden. Scott Bryden is the President of Bryden Motors, Inc. In that position, Scott Bryden controls the operations of Bryden Motors, Inc., including its automobile franchise agreements, used car sales, and service department.

Oops, LLC, is a limited liability company organized under the laws of the State of Wisconsin. Vicki Bryden, the sole owner of Bryden Motors, is also Oops, LLC's sole member. Her daughter Christine Bryden Lawver is the operations manager for Oops. Until November 2017, Oops operated a Ziebart franchise in South Beloit, Illinois, which involved detailing of new and used cars, bullet liners, window tinting, rustproofing and other auto and truck accessories. Oops then began doing business as "815 Custom Auto," continuing the same services as it provided as a Ziebart franchise. Defendant maintains, and plaintiff does not challenge, that Oops never had more than ten employees at a time,

and usually had five or fewer.

Other than their common ownership, defendant Bryden Motors maintains that Oops and it have no "corporate affiliation." (Def.'s PFOFs (dkt. #19) ¶ 26.) In particular, they do not operate out of the same building; indeed, their locations are in different states, although the distance between Bryden Motors in Beloit, Wisconsin, and 815 Custom Auto in South Beloit, Illinois is just 0.7 miles based on driving directions from 548 Broad St., Beloit, WI, to 209 S. Park Ave., South Beloit, IL. Google Maps, https://google.com/maps. Oops also files its own annual report and tax returns. Finally, the entities do not share a tax identification number or a bank account.

Still, defendant Bryden Motors acknowledges it "processed the payroll" for Oops to save administrative resources, while further contending that Oops reimbursed Bryden Motors on a monthly basis for "payroll expenditures." Defendant also acknowledges that Oops distributed Bryden Motors' "Policy Manual" because Oops did not have its own employee handbook and wanted to avoid creating a separate employee handbook.

**B. Plaintiff's Employment**

In August 2016, in response to Searles' posting his resume online, Christine Bryden Lawver contacted Searles about a position as manager of Ziebart of South Beloit, the franchise then operated by Oops. Searles was interviewed by Christine and her mother Vicki.[1] Christine offered Searles the position, and he began working that month.

---

[1] Because more than one relevant actor here share the Lawver and Bryden surnames, the court will refer to some individuals by their first names.

Plaintiff's 2017 and 2018 W-2 forms listed his employer as "Bryden Motors Inc," with an address in Beloit, Wisconsin, and an employer identification number of 39-1024152 that corresponds with Bryden Motors. (Searles Decl. (dkt. #22) ¶ 3; *id.*, Ex. A (dkt. #22-1).) Moreover, plaintiff's paychecks were issued by Bryden Motors, Inc., from its checking account with Blackhawk Bank. (*Id.*)

Shortly after Searles was hired, a number of concerns arose with respect to his job performance.[2] As an initial matter, a Ziebart manager told Christine that she would have difficulty with Searles. After Searles refused to deal with this manager, Christine was required to manage everything relating to the Ziebart franchise relationship. At some unidentified time, Searles also threatened to call the police on a customer and told the customer not to return. Christine counseled Searles and told him that this was not the way the company did business. In addition, before Searles' employment, Bryden Motors referred a number of customers to Ziebart of South Beloit for detailing and after-market parts. However, Searles allegedly did not want to listen to Bryden Motors customer complaints, and Bryden Motors' employees did not want to work with Searles because of his attitude. Despite the co-ownership relationship, defendant maintains that Bryden Motors ultimately stopped referring customers to Ziebart of South Beloit.

Defendant acknowledges, however, that Christine never put anything in Searles' personnel file documenting these concerns. Searles also maintains that "[a]t no time prior

---

[2] Defendant submits a number of proposed facts suggesting that there were performance concerns shortly after Searles' hire. As explained below in the opinion, the relevance of these facts, appears limited. Nonetheless, the court will set forth those proposed findings to the extent useful for general context.

to my discharge was I told by anyone at Bryden Motors, Inc. that my performance was poor." (Searles Decl. (dkt. #22) ¶ 11.)

In late 2017, around the same time Oops ended the Ziebart franchise and began operating as 815 Custom Auto, Christine talked to Searles about bringing in her husband, Scott Lawver, to help run 815 Custom Auto. Scott started working at 815 Custom Auto on a part-time basis in late February 2018, ostensibly brought in "as a member of the family . . . to 'help [Searles] out' and 'hopefully get the Bryden Motors business back, because he was the service manager at Bryden Motors, so he knows all of the people.'" (Def.'s PFOFs (dkt. #19) (quoting Christine Lawver Dep. (dkt. #13) 15).) However, Searles remained the manager. There is no dispute that Searles and Scott's working relationship got off to a rough start.

## C. March 2018 Events

In March 2018, the following individuals worked at 815 Customer Auto: Trevor Searles as manager; Audryanna Johnson as office assistant; Anuar Ojeda and Michael Muenchow as technicians; Christine Bryden Lawver as operations manager; and Scott Lawver in a part-time support role. Searles was on vacation from approximately March 1 until the afternoon of March 7, 2018, and Christine and Scott were on vacation from March 5 through Friday, March 9, 2018, during which Christine exchanged a series of text messages with Searles, but was unable to meet with him the weekend she got back. On Sunday, March 11, Searles also called Christine to ask for the next day off because it was his birthday, and Christine approved that day off.

When Searles returned from his vacation on March 7, Johnson told him that she

5

was uncomfortable with Scott touching her and more specifically, that he rubbed her back and shoulders and would corner her. After talking with Johnson, Searles verified her complaint by reviewing images on the company surveillance camera. The next day, March 8, Searles reported the incident to Katie Bontjes, the Human Resources person at Bryden Motors. Searles maintains that "[a]t no time," did anyone tell him that he "was not reporting the complaint to the appropriate company." (Searles Decl. (dkt. #22) ¶ 7.)

When Christine returned from her vacation on Monday, March 12, Christine learned about Johnson's complaint and went to 815 Custom Auto to speak with Johnson. After that meeting, Johnson prepared the following written statement: "Scott has not done anything inappropriate to me. I discussed that I don't enjoy being touched and he understands that because of my past and I am comfortable in my work environment." (Def.'s PFOFs (dkt. #69) (citing Compl., Ex. F (dkt. #1-6).)

Also on Monday morning -- the same day she met with Johnson -- Christine learned that there were no technicians scheduled to work, even though (1) there were customer appointments and (2) as manager, Searles' responsibilities included making sure Custom Auto 815 was staffed appropriately. Christine then called Searles to ask him why he had scheduled everyone off that day, and also to tell him that this was unacceptable. Searles reportedly responded, "Well, Scott knows everything. Let him do it." (Def.'s PFOFs (dkt. #19) ¶ 85 (quoting Christine Bryden Lawver Dep. (dkt. #13) 37).)

Still that same day, Christine further learned that she had not been made an

Administrator of the 815 Custom Auto Facebook page, despite her instructions otherwise.[3] While she was on the telephone with Searles, Christine also asked him to put her back on as an Administrator, to which Searles reportedly responded, "we'll see," and hung up on her. (*Id.* ¶ 89 (quoting Christine Bryden Lawver Dep. (dkt. #13) 26).)

In contrast, Searles denies that he ever "spoke disrespectfully" to Christine. (Searles Decl. (dkt. #22) ¶ 16.) She also had concerns that he was "intentionally sabotaging" the business (*id.* ¶ 100 (citing Christine Bryden Lawver Decl. (dkt. #16) ¶ 22)), which Searles denies. (Searles Decl. (dkt. #22) ¶ 13.)

Christine next texted one of the two technicians, Michael Muenchow, that she would like to meet with him. Instead, Searles apparently called Christine back and said, "We would all like to meet with you." (*Id.* ¶ 93 (quoting Christine Bryden Lawver Dep. (dkt. #13) 27).) Ultimately, Christine asked them all to meet at her office at Bryden Motors. Christine met with the two technicians on an individual basis first, asking Searles to come back after lunch to meet with her. At this point, she had made the decision to terminate his employment because of "his attitude and how he was behaving." (*Id.* ¶ 98 (quoting Christine Bryden Lawver Dep. (dkt. #13) 30).) When Searles returned, with a witness also present, Christine terminated Searles' employment.

**D. ERD Proceeding**

In response to his firing, plaintiff filed a Fair Employment Complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development ("ERD"),

---

[3] Christine wanted to be an Administrator of the Facebook page because, she represents, Searles had reportedly taken down the Facebook page for his prior employer out of spite.

7

claiming his termination was the product of unlawful retaliation for reporting sexual harassment of another employee. Plaintiff expressly named Bryden Motors, Inc., as his employer in the complaint he submitted to the ERD and Bryden Motors responded to that grievance, disputing the charge of retaliation but not that it was Searles' employer. (*Id.* ¶¶ 4-5; *id.*, Ex. B (dkt. #22-2).) Bryden Motors also submitted its Policy Manual in response to the ERD charge.

More specifically, defendant Bryden Motors responded by stating that it "strongly denies the charge and maintains there is no evidence to support the allegations. [Instead, t]he charging party was dismissed due to unsatisfactory performance." (Searles Decl., Ex. B (dkt. #22-2).) Bryden Motors' April 13, 2018, statement went on to explain:

> Treavor Searles was hired on 8/15/16 as the Ziebart manager. . . . Trevor reported directly to Christine Lawver. Ziebart is a franchised automotive accessory store. The Ziebart franchise was discontinued in November of 2017. The Ziebart store then became 815 Custom Auto. Bryden Motors is a franchised automobile dealership. By rule of common ownership, payroll for 815 Custom Auto is done under Bryden Motors. The business was continued with the same employees, the same location and the same services. The business operations and profitability of the accessory store significantly declined after the Ziebart relationship ended. Part of Mr. Searles' responsibility as manager was to cultivate new business and generate sales. Under his managerial direction, Mr. Searles lost the business account of Bryden Motors due to an indifferent attitude. On 2/26/18, another manager was brought in to assess the situation at hand and see what changes could be made to regain any lost accounts. That person was Scott Lawver.

(*Id.*)

This formal response was signed by Wendy Johnson, Operations Manager, Bryden Motors, Inc. The ERD issued an initial determination, finding probable cause that Searles

was terminated because he opposed a discriminatory practice. (Searles Decl., Ex. B (dkt. #22-2) 11.) At that point, Searles requested to withdraw his complaint and receive a right to sue letter, which the ERD granted. (*Id.* at 12.) This lawsuit followed.

OPINION

Defendant Bryden Motors seeks summary judgment on plaintiff's Title VII retaliation claim for two, basic reasons: (1) defendant was not Searles' employer; and (2) Searles lacks sufficient evidence from which a reasonable jury could conclude that he was terminated in retaliation for his protected conduct. The court addresses each argument below.

I. **Employer**

Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an *employer* . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). Accordingly, a claim for retaliation under Title VII must be directed against the individual's employer. *See Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015) ("In order to bring a Title VII claim against [the defendant], [the plaintiff] must prove the existence of an employer-employee relationship."). Here, defendant Bryden Motors contends that it was not Searles' employer, and he was instead employed by Oops, LLC, a separate entity.

As an initial matter, defendant argues that the ERD proceeding did not *establish* that Bryden Motors was Searles' employer, directing the court to cases holding that findings

9

during the administrative process do not have any preclusive effect. *See Richmond v. St. Joseph Care Ctr. W.*, 190 F.3d 500, 502 (7th Cir. 1999) (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986)). While correct as far as it goes, this argument misses the import of defendant's contention. As the court understands plaintiff's position, he is neither arguing that the administrative proceeding found as a matter of fact that Bryden Motors was plaintiff's employer, nor that this court is legally bound by such a finding. Instead, plaintiff contends that defendant should be estopped from arguing that it was not Searles' employer given that it failed to raise this during the administrative process. To be fair to defendant, plaintiff cites no support for this, nor could the court find such support.

The United States Supreme Court, however, has held that estoppel applies for purposes of determining whether an administrative grievance is timely. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that "filing of a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). The policy behind this holding -- that a plaintiff should not be prejudiced by an employer's lulling him into a delay in filing an administrative complaint, *see, e.g.*, *Smith v. Potter*, 445 F.3d 1000, 1010 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) -- would appear to apply with equal force here. Having failed to argue in the administrative process that it was not Searles' employer, defendant effectively lulled plaintiff into believing that he had successfully exhausted his administrative claim for purposes of bringing this lawsuit. Moreover, the fact that there are no cases supporting plaintiff's estoppel argument is not surprising: one would think

that a company listed as an employer in a charge of discrimination would affirmatively deny that it was the employer in its response, unless it lacked adequate legal advice or hoped to lull the plaintiff into a fatal mistake. Here, especially, since the only other possible employer -- Oops, Inc. -- was owned by the same person, the latter is at least a possibility, although since Oops is not covered by Title VII, a less likely one. Regardless, given the lack of direction in the caselaw the court is disinclined to find that defendant is wholly estopped from pursuing this argument.

Still, the court finds on the record before it that there is a legitimate dispute as to whether defendant was in fact Searles' employer or should be treated as one of his employers for purposes of Title VII. *See Frey v. Coleman*, 903 F.3d 671, 676 (7th Cir. 2018) ("For Title VII purposes, however, a plaintiff can have more than one employer."). At this point, the only evidence defendant presents to support its position that Oops, LLC was Searles' employer is Christine's representations as the operations manager. In contrast, the job listing for which Searles applied and was hired identified the position as "Ziebart Manager," without any reference to Oops. (Searles Decl., Ex. B (dkt. #22-2) 3.) Further, defendant Bryden Motors acknowledges that it processed payroll for Searles, although it claims to have done so on behalf of Oops, for administrative ease and subject to reimbursement for related expenses. Again, however, defendant presents no record evidence demonstrating reimbursement of payroll costs. Moreover, Searles' W-2 forms list defendant Bryden Motors as his employer, and appear to include its employer identification number, even though defendant represents that the two entities have different tax ID numbers. Providing payroll services for administrative ease is one thing;

11

holding itself out to both employees and the government as an employer for tax withholding purposes is quite another. There are also other facts suggesting an overlap in the companies' operations, including that both Christine Bryden Lawver and Scott Lawver appear to have performed Oops' work from their Bryden Motors' offices. Finally, Searles reported the uncomfortable touching to Bryden Motors' HR department and Bryden Motors responded to that complaint, which provides additional support for a finding that defendant was Searles' employer or at least one of them.

These facts make defendant's subsequent conduct before the ERD process, including relying on its Policy Manual, and failing to indicate in its response that 815 Custom Auto was operated as a separate business, much less the true and only employer, even more telling. And while not definitive as statements by a party opponent, they would appear to further support a reasonable inference that there was blurring of the lines between these two entities, making defendant a co-employer, if not the sole one. At minimum, plaintiff has raised a genuine issue of material fact as to whether defendant should be considered a joint or indirect employer. *See Love*, 779 F.3d at 701-03 (discussing *E.E.O.C. v. State of Ill.*, 69 F.3d 167, 171 (7th Cir. 1995); *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991)). Alternatively, plaintiff has also presented enough evidence from which a reasonable jury could find piercing of the corporate veil, sufficient to implicate Bryden Motors as a defendant. *See Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001) (explaining that an affiliated company could be liable

as an employer under Title VII under a piercing theory).[4] As such, the court will deny defendant's motion as to this argument.

## II. Causation

A plaintiff can prevail on a retaliation claim only if he proves that: "(1) he engaged in a statutorily protected activity, (2) his employer took a materially adverse action against him, and (3) there is a causal link between the protected activity and the adverse action." *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019). At least for purposes of summary judgment, defendant does not dispute that plaintiff engaged in protected conduct under Title VII when he reported Scott's uncomfortable touching of Johnson. (Def.'s Opening Br. (dkt. #18) 2.) Moreover, there is no dispute that termination constitutes an adverse employment action. As such, defendant's motion -- and, in turn, plaintiff's claim -- turns on the third element, causation.

To prove retaliation under Title VII, plaintiff must demonstrate that his protected activity was the but-for cause of the adverse action. *See Mollet*, 926 F.3d at 897 (discussing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)). Such "causation can be established by circumstantial evidence, which includes, for example, 'suspicious timing, a pretextual explanation for the [adverse action], and evidence that similarly situated employees were treated differently.'" *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (citing *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016)).

---

[4] In submitting jury instructions, the parties should pay special attention to crafting jury instructions on the question of whether Bryden Motors was in fact Searles' employer or should be treated as his employer.

13

Here, plaintiff points to the evidence falling within the first two categories: timing and pretextual explanations. As described above, plaintiff's termination occurred on the *same* day his supervisor Christine Bryden Lawver learned of Searles' complaint about Scott Lawver's uncomfortable touching of an office administrator. While the court recognizes that "[s]uspicious timing alone rarely establishes causation," the Seventh Circuit has also instructed that "if there is corroborating evidence that supports an inference of causation, suspicious timing may permit a plaintiff to survive summary judgment." *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015). In this case, not only did Christine terminate Searles' employment the day she learned of his complaint, but she also acted swiftly to "resolve" the complaint, going directly to the office assistant and obtaining an oddly written statement that did not deny the event, but instead stated that she felt "comfortable in [her] work environment." Even worse, rather than having the HR department manage the process, Christine engaged in the particularly questionable practice of taking over the inquiry despite the fact that the person who was alleged to have engaged in the uncomfortable touching was *her* husband.

In addition to the suspicious timing, plaintiff points out that the reasons provided for his termination have shifted.[5] For example, Christine represents that she did not intend to terminate Searles' employment when she went to work on the morning of March 12,

---

[5] Plaintiff also points to the ERD's finding of probable cause, but, as explained above, the administrative finding has no preclusive effect, and the court typically would not admit such a finding at trial, even though some of the evidence from the administrative process could be admitted as statements of a party opponent, to refresh recollection, for impeachment purposes or for other reasons. *See de Lima Silva v. Dep't of Corr.*, No. 17-CV-128-WMC, 2020 WL 108487, at *2 (W.D. Wis. Jan. 9, 2020).

but made the decision that day to terminate his employment because of his attitude and concerns that he was intentionally sabotaging the business. In its ERD response, however, defendant contends that Searles was fired because of "unsatisfactory performance" and, specifically, his failure to "cultivate new business and generate sales." (Searles Decl., Ex. B (dkt. #22-2) 1.) Moreover, Searles disputes these reasons for his termination, and specifically avers that he was never disrespectful to Christine, never intentionally sabotaged the business, and never even informed of any performance concerns before being fired. (Searles Decl. (dkt. #22) ¶¶ 10, 13, 15.)

While this evidence may not be overwhelming, in combination with the highly suspicious timing and circumstances surrounding his abrupt firing, the court nonetheless concludes that plaintiff has put forth sufficient evidence from which a reasonable jury could conclude that he was terminated because of protected activity under Title VII.

## ORDER

IT IS ORDERED that:

1) Defendant Bryden Motors, Inc.'s motion for summary judgment (dkt. #15) is DENIED.

2) On or before February 19, plaintiff's counsel is directed to submit a letter to the court verifying that he carefully reviewed the court's preliminary pretrial packet.

Entered this 4th day of February, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge